460 S.E.2d 65

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Bobby WOODS, Defendant Below, Appellant.**

**No. 22555.**

Supreme Court of Appeals of West Virginia.

Submitted May 30, 1995.

Decided June 19, 1995.

Mark D. Hudnall, Summersville, for appellant.

Darrell V. McGraw, Jr., Atty. Gen., Scott E. Johnson, Asst. Atty. Gen., Jacquelyn I. Custer, Sr. Asst. Atty. Gen., Charleston, for appellee.

Per Curiam.

This case is before this Court upon an appeal from the final order of the Circuit Court of Nicholas County, West Virginia, entered on November 12, 1993. Pursuant to that order, the appellant, Bobby Woods, was sentenced to a determinate term of thirty-six years in the penitentiary following his conviction by a jury of aggravated robbery. *W.Va. Code,* 61–2–12 [1961]. For the reasons stated below, we affirm.

I

On the evening of November 27, 1992, at approximately 9:45 p.m., a man wearing a maroon jacket and carrying a shotgun entered a Go–Mart store in Craigsville, Nicholas County, West Virginia. Wearing a pair of pantyhose over his head to disguise his features, the man ordered the clerk, who was otherwise alone in the store, from the back of the store to the front where the cash register was located. At gunpoint, the clerk placed food stamps, checks, credit card slips, lottery tickets, change and two hundred to three hundred dollars in bills in a white plastic Go–Mart bag and handed it to the assailant. The man then grabbed the clerk, forcibly kissed her, and exited the store. He then entered a nearby automobile in which two other men were waiting, and the car was driven away.

Across the street, three men, Parley R. Nicely, James Withrow and another, observed the robbery. They followed the suspects' car in their own automobile until they were able to identify the suspects' car as a blue Chevrolet Nova, license plate number NXL–376. The observers had noticed that the assailant in the store was wearing a maroon jacket. After following the suspects, the observers returned to the Go–Mart and reported their information to the police.

Thereafter, police radio dispatches were issued, and a general search for the suspects began. At approximately 11:00 p.m., Assistant State Fire Marshall Gregory P. Greer, who was also a law enforcement officer, spotted the suspects' car, which contained three passengers. Greer followed the car, a Chevrolet Nova, in his vehicle until it parked at the residence of Carlos Copen, in Craigsville. Greer drew his weapon and kept the suspects in the Chevrolet Nova until the arrival of other officers.

Soon after, Nicholas County Deputy Sheriffs Robinson, Hodovan and Spinks arrived at the scene. The three suspects, Roy Kesterson, Carlos Copen and Bobby Woods, were removed from the car, a blue Chevrolet Nova, license number NXL–376, and placed under arrest.

Bobby Woods had been lying in the back seat of the car, and the officers found and removed a loaded shotgun and a white plastic Go–Mart bag from the back seat floorboard. Woods had been lying upon a wad of bills in the back seat, and that money, plus the bills found in his pockets, totalled one hundred eighty-one dollars. Also found upon the person of Bobby Woods were shotgun shells, some food stamps and change consisting of thirty quarters, thirty-seven dimes, twenty-nine nickels and forty-seven pennies. In addition, at the time of his arrest, Bobby Woods was wearing a maroon jacket under a sweater or sweat shirt.

Carlos Copen had been seated in the passenger side of the front seat of the Chevrolet Nova, and Roy Kesterson had been seated behind the wheel. Although no property was taken from Carlos Copen, shotgun shells and a small amount of money were found upon Roy Kesterson. No checks, credit card slips or lottery tickets were found.

In January 1993, Roy Kesterson, Carlos Copen and Bobby Woods were indicted by a Nicholas County grand jury for the felony offense of aggravated robbery. Pursuant to *W.Va.Code,* 61–2–12 [1961], aggravated robbery is "robbery by partial strangulation or suffocation, or by striking or beating, or by other violence to the person, or by the threat or presenting of firearms, or other deadly weapon or instrumentality whatsoever [.]"

*State v. Neider,* 170 W.Va. 662 n. 1, 295 S.E.2d 902 n. 1 (1982); *State v. Harless,* 168 W.Va. 707, 711, 285 S.E.2d 461, 464 (1981).

The defendants' trials were severed, and a June 1993 trial of Bobby Woods resulted in a mistrial. The retrial of Bobby Woods, which is the basis of this appeal, began on September 15, 1993. At trial, Woods asserted the defense of alibi. In particular, he testified that at the time of the robbery he was drinking at a local bar known as the D & D Tavern and that he left the bar after 10:00 p.m. He then talked to and shared liquor with an unidentified female just outside the bar until sometime after 11:00 p.m. and later walked to the Copen residence where he was staying. Upon arriving at the Copen residence, Woods got into the Chevrolet Nova, then unoccupied, and passed out until the time of his arrest.

In addition, Bobby Woods testified that he never noticed a shotgun in the back seat floorboard of the car. He further stated that although he was wearing a maroon jacket that night, he possessed the food stamps because he was a State food stamp recipient and, also, that he possessed the shotgun shells because he had sold a different shotgun that day and forgot to give the shells to the buyer. The owner of the D & D Tavern testified that Bobby Woods was in the bar until 10:00 p.m.

The State, however, in addition to submitting evidence concerning the robbery, investigation and arrest, elicited the testimony of the Go–Mart store clerk who identified Bobby Woods at trial as the assailant. On September 20, 1993, the jury found Bobby Woods guilty of aggravated robbery. Subsequently, Woods was sentenced to a determinate term of thirty-six years in the penitentiary.

II

The principal issues of concern to this Court relate to the admission at the September 1993 trial of the former testimony of Parley R. Nicely and James Withrow from the June 1993 trial, and the sentence of Bobby Woods to a determinate term of thirty-six years in the penitentiary.

As stated above, Parley R. Nicely and James Withrow and another observed the robbery and identified the suspects' car as a blue Chevrolet Nova, license plate number NXL–376. Nicely and Withrow testified to that effect at Bobby Woods' June 1993 trial. They were not found, however, for the September 1993 retrial. Moreover, the third person with Nicely and Withrow on the night of the robbery did not testify at the retrial and has not been mentioned in this appeal.

Following an *in camera* hearing, the circuit court admitted the former testimony of Nicely and Withrow before the September 1993 jury. Specifically, the circuit court found that, pursuant to Rule 804 of the *West Virginia Rules of Evidence*, the State had made a reasonable effort to procure the attendance of Nicely and Withrow at the September 1993 trial. Rule 804 provides, in part:

(a) *Definition of Unavailability.*—'Unavailability as a witness' includes situations in which the declarant—

. . . .

(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means.

. . . .

(b) *Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) Former Testimony.—Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

■ In *Rine v. Irisari,* 187 W.Va. 550, 420 S.E.2d 541 (1992), we held in syllabus point 3 that "[a]s a condition precedent to the admissibility of former testimony under *W.Va.R.Evid.* 804(b)(1), the proponent of such testimony must show the unavailability of the witness. If the witness is available,

the in-court testimony of that witness is preferred." Moreover, in the criminal context, we stated in syllabus point 3 of *State v. James Edward S.,* 184 W.Va. 408, 400 S.E.2d 843 (1990), that "[i]n order to satisfy its burden of showing that the witness is unavailable, the State must prove that it has made a good-faith effort to obtain the witness's attendance at trial. This showing necessarily requires substantial diligence." *See also* syl. pt. 5, *State v. Dillon,* 191 W.Va. 648, 447 S.E.2d 583 (1994); syl. pt. 1, *State v. Shepherd,* 191 W.Va. 11, 442 S.E.2d 440 (1994); syl. pt. 2, *State v. Phillips,* 187 W.Va. 205, 417 S.E.2d 124 (1992); *State v. Judy,* 179 W.Va. 734, 737–38, 372 S.E.2d 796, 799–800 (1988). *See also,* Franklin D. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8–4. (3rd ed. Michie 1994); Milton Roberts, Annotation, *Sufficiency of Efforts to Procure Missing Witness' Attendance to Justify Admission of His Former Testimony—State Cases,* 3 A.L.R.4th 87 (1981).

■ In *Shepherd, supra,* this Court reversed the defendant's conviction of malicious wounding because the record failed to demonstrate that the State made a diligent effort to secure the attendance of an inculpatory witness. The circuit court, in *Shepherd,* admitted the preliminary hearing testimony of the witness pursuant to Rule 804(b)(1) of the *West Virginia Rules of Evidence.* However, there was no evidence that the State ever sought out a known relative of the witness in order to locate the witness' whereabouts, and, further, after several continuances of the trial, the State failed to subpoena the witness.

By contrast, the record in the case before this Court plentifully shows diligence on the part of the State to secure the attendance of Nicely and Withrow for the September 1993 trial. Subpoenas were requested for Nicely and Withrow on August 27, 1993. Furthermore, the circuit court conducted an *in camera* hearing during which Deputy Sheriff Robinson and Eddie Jarrett, a process server with the Nicholas County Sheriff's Office, testified concerning the State's efforts to locate those witnesses. Robinson and Jarrett indicated that they continuously looked for

Nicely and Withrow after the subpoenas were issued and sought assistance from the Webster County Sheriff's Office upon the basis that the witnesses might have been in Webster County. In particular, Officer Robinson testified that he attempted to locate Nicely at Nicely's mother's residence and sister's residence and at Nicely's last place of employment, to no avail. Officer Jarrett testified that he spoke with family members of James Withrow more than once and was simply told that Withrow was "out of state."

Following the *in camera* hearing, the circuit court found that the State had made a reasonable effort to procure the attendance of Nicely and Withrow at the September 1993 trial. Additionally, the circuit court commented: "The former testimony was in exactly the same trial and concerned exactly the same facts. It concerned exactly the same attorneys, and the full right of cross-examination was given at that time."

The record in this case supports a finding of substantial diligence, within the meaning of *State v. James Edward S., supra,* concerning the efforts of the State to locate Parley R. Nicely and James Withrow. Accordingly, the circuit court did not commit error in admitting their former testimony.

Bobby Woods further asserts that the determinate term of thirty-six years, imposed by the circuit court, is disproportionate under the circumstances of this case to the crime of aggravated robbery. *W.Va. Const.* art. III, § 5 ("Penalties shall be proportioned to the character and degree of the offense."). Pursuant to *W.Va.Code,* 61–2–12 [1961], a person convicted of aggravated robbery "shall be confined in the penitentiary not less than ten years."

■ Generally, this Court stated in syllabus point 4 of *State v. Goodnight,* 169 W.Va. 366, 287 S.E.2d 504 (1982): "Sentences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." *See also* syl. pt. 9, *State v. Koon,* 190 W.Va. 632, 440 S.E.2d 442 (1993); syl. pt. 9,

*State v. Hays,* 185 W.Va. 664, 408 S.E.2d 614 (1991); 5B M.J. *Criminal Procedure* § 82 (1990). As to aggravated robbery, we have recognized that *W.Va.Code,* 61–2–12 [1961], "vests broad discretion in the trial judge to impose a determinate sentence in the penitentiary[.]" *Carter v. Bordenkircher,* 159 W.Va. 717, 720, 226 S.E.2d 711, 714 (1976). *See also State ex rel. Faircloth v. Catlett,* 165 W.Va. 179, 181, 267 S.E.2d 736, 737 (1980): "The Legislature chose not to deprive trial courts of discretion to determine the appropriate specific number of years of punishment for armed robbery, beyond ten."

■ An important decision with regard to proportionality of sentencing, especially in robbery cases, is *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983). In *Cooper,* this Court recognized two tests to determine whether a sentence is so disproportionate that it violates *W.Va. Const.* art. III, § 5. The *Cooper* opinion states:

The first [test] is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981): 'In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

172 W.Va. at 272, 304 S.E.2d at 857.[1]

In the subsequent cases of *State v. Buck,* 178 W.Va. 505, 361 S.E.2d 470 (1987), and

---

1. Citing *Cooper,* the two tests were described somewhat differently in *State v. Ross,* 184 W.Va. 579, 402 S.E.2d 248 (1990):

The first [test] is a subjective test and asks whether the sentence for a particular crime shocks the conscience of the Court and society. If the sentence is so offensive that it cannot

*State v. Martin,* 177 W.Va. 758, 356 S.E.2d 629 (1987), we cited *Cooper* and upheld respective sentences of thirty years and forty-five years.

This Court noted in *State v. Ross,* 184 W.Va. 579, 582, 402 S.E.2d 248, 251 (1990), that "[a]ggravated robbery in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved." In the case *sub judice,* Bobby Woods was convicted of a robbery in which a female clerk, otherwise alone in the store, was forced from the back of the store to the front of the store at gunpoint, made to hand over the contents of the cash register and then forcibly kissed. At sentencing, both the prosecutor and the circuit court judge indicated that the woman may never recover from the effect of the crime. We have recognized that emotional or physical injury to the victim of a robbery may be considered in the sentencing of a convicted defendant. *State v. Spence,* 182 W.Va. 472, 482, 388 S.E.2d 498, 508 (1989); *State v. Buck, supra,* 178 W.Va. at 508, 361 S.E.2d at 473. Moreover, the record in this case indicates that Woods violently resisted his arrest at the Copen residence.

After receiving the sentence of thirty-six years, a motion for reduction of sentence was filed on behalf of Bobby Woods. The circuit court conducted a hearing upon the motion during which Woods' sister testified concerning Woods' history of alcohol abuse, physical injuries and disinclination to commit violent acts. Following the hearing, the circuit court concluded that, having considered the presentence report, the testimony of Woods' sister, the violent and deliberate nature of the robbery and all other matters of record, the motion for reduction of sentence should be denied.

Upon a careful examination of the record, and in consideration of the above authorities, this Court is of the opinion that the determinate term of thirty-six years is not disproportionate under the circumstances of this case

to the conviction of aggravated robbery. Rather, we believe the sentencing determination of the circuit court is "protected by the parameters of sound discretion[.]" *Parker v. Knowlton Construction Company,* 158 W.Va. 314, 329, 210 S.E.2d 918, 927 (1975).

■ Finally, counsel for Bobby Woods, who is not the same attorney who represented Woods at the September 1993 trial, raises several issues concerning ineffective assistance of counsel. In that regard, Woods asserts, *inter alia,* that his trial attorney conducted an inadequate *voir dire* of the jury during the September 1993 trial and that his trial attorney failed to make certain objections during the State's closing argument. Upon this record, however, we are of the opinion that Woods' assertions concerning ineffective assistance of counsel are more appropriately suited to development in a *habeas corpus* proceeding. As this Court suggested in syllabus point 10 of *State v. Triplett,* 187 W.Va. 760, 421 S.E.2d 511 (1992):

It is the extremely rare case when this Court will find ineffective assistance of counsel when such a charge is raised as an assignment of error on a direct appeal. The prudent defense counsel first develops the record regarding ineffective assistance of counsel in a habeas corpus proceeding before the lower court, and may then appeal if such relief is denied. This Court may then have a fully developed record on this issue upon which to more thoroughly review an ineffective assistance of counsel claim.

Syl. pt. 13, *State v. Kilmer,* 190 W.Va. 617, 439 S.E.2d 881 (1993). Moreover, as we held in syllabus point 11 of *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988): "Where the record on appeal is inadequate to resolve the merits of a claim of ineffective assistance of counsel, we will decline to reach the claim so as to permit the defendant to develop an adequate record in habeas corpus." *See also* syl. pt. 7, *State v. Julius,* 185 W.Va. 422, 408

pass this test, then inquiry need proceed no further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge should be resolved by more objective factors which include the consideration of

the nature of the offense, the defendant's past criminal history, and his proclivity to engage in violent acts.

184 W.Va. at 581–82, 402 S.E.2d at 250–51.

S.E.2d 1 (1991); syl. pt. 3, *State v. Bess*, 185 W.Va. 290, 406 S.E.2d 721 (1991).[2]

All other issues raised are without merit, and, accordingly, the final order of the Circuit Court of Nicholas County, entered on November 12, 1993, is affirmed.

Affirmed.

BROTHERTON, J., did not participate.

FOX, J., sitting by temporary assignment.

2. With regard to claims of ineffective assistance of counsel, we recently held in syllabus points 5 and 6 of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995):

5. In the West Virginia courts, claims of ineffective assistance of counsel are to be governed by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984): (1) Counsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.

6. In reviewing counsel's performance, courts must apply an objective standard and determine whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of professionally competent assistance while at the same time refraining from engaging in hindsight or second-guessing of trial counsel's strategic decisions. Thus, a reviewing court asks whether a reasonable lawyer would have acted, under the circumstances, as defense counsel acted in the case at issue.