519 S.E.2d 835

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Tara WILLIAMS, Defendant Below, Appellant.**

No. 25815.

Supreme Court of Appeals of West Virginia.

Submitted May 5, 1999.

Decided June 15, 1999.

Dissenting Opinion of Chief Justice Starcher Sept. 8, 1999.

Darrell V. McGraw, Jr., Esq., Attorney General, Leah Perry Macia, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

Thomas K. Fast, Esq., Fayetteville, West Virginia, for the Appellant.

PER CURIAM:

This case is before this Court upon appeal of a final order of the Circuit Court of Fayette County entered on February 19, 1998. In that order, the circuit court sentenced the appellant, Tara Williams, for a voluntary plea conviction of attempted aggravated robbery, to a term of 50 years in the West Virginia State Penitentiary. In this appeal, the appellant contends that the 50–year sentence is unconstitutionally excessive and disproportionate to the character and degree of the offense she committed.

This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel. For the reasons set forth below, we affirm the appellant's sentence.

I.

The events which led to the appellant's conviction for attempted aggravated robbery began on June 6, 1997. On that day, the appellant went to Joseph Hundley's house with three of her friends, Jenny Dawn Suttle, Margaret Talouzi, and H.J.[1] The purpose of the visit was to retrieve Suttle's identification card which she left with Hundley when she borrowed money from him on an earlier occasion. During the visit, Hundley offered to pay the girls one hundred dollars each if they would come back the next evening and "strip dance" for him. The girls agreed and left Hundley's house.

The next day, the appellant, Talouzi, and H.J. spent several hours driving around Oak Hill, West Virginia, looking for Suttle. The girls planned to go to Hundley's house that evening and trick him out of his money by telling him that they would dance for him; however, they intended to leave to go to a store before actually dancing and never return. After looking for Suttle for several hours, the three girls stopped at a Pit Row store in Oak Hill to eat and consider whether to go to Hundley's house without Suttle. While at the store, the appellant saw her friend, Mark Yoney. Yoney was with Wally Swafford and another man called "A.J." The girls told these men of their plan to trick Hundley out of his money. Yoney expressed an interest in the plan and invited the girls to his apartment.

At the apartment, Yoney and Swafford decided to accompany the girls to Hundley's house. The group came up with a plan to take Hundley's money by force if the girls were unable to trick him. Before leaving, the girls heard Yoney and Swafford mention a gun. The girls told them that a gun was not necessary and they agreed not to take it.

Thereafter, the appellant, Talouzi, H.J., Yoney, and Swafford proceeded to Hundley's house in A.J.'s car. Upon arrival, the car was parked near a fence between Hundley's

---

1. H.J. is a juvenile who will be referred to by her initials in accordance with our customary practice for cases involving juveniles and sensitive facts. *See In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

and a neighbor's property. The men stayed in the car and the girls went to the door.

Inside the house, the girls asked Hundley if he had the money. He said "yes" and showed them a wad of bills. He told them that he still wanted them to dance and that he had bought some beer for them. The appellant then informed Hundley that she was going to go out to the car to get her cigarettes. Shortly after the appellant returned to the house, Yoney and Swafford rushed in with a gun and demanded the money. A struggle commenced between the three men and Swafford fired the gun. In the meantime, Yoney instructed the appellant to disconnect the phone and grab the case of beer. The three girls then ran toward the car. The appellant looked back and saw Hundley running out of the house with Swafford behind him. Swafford fired a second shot at Hundley and Yoney attacked him. The men then quickly got in the car leaving Hundley laying in the yard. The five sped away and later discarded Yoney's blood-stained sweatshirt over a hill.

The next day, the appellant and Talouzi went to Yoney's apartment where they learned that Hundley had died of the gunshot wounds. The appellant and Talouzi then proceeded to H.J.'s apartment where the police were waiting. The appellant was arrested for murder, and taken to the police station. Initially, the appellant lied about the events that occurred the night before. However, eventually, she cooperated with the police and disclosed the location of the blood-stained sweatshirt.

Thereafter, the State offered a plea agreement to the appellant, wherein the State agreed to dismiss the murder charge and allow the appellant to plead guilty to attempted aggravated robbery in exchange for her complete cooperation. The State also

agreed to advise the court of the appellant's cooperation at her sentencing hearing and ask the court to take that fact into consideration when rendering a sentence. It was understood, though, that sentencing would be left to the discretion of the court.

On September 16, 1997, the appellant pled guilty to the attempted aggravated robbery of Joseph Hundley. In cooperation with the State, the appellant testified at the trials of Yoney and Swafford.[2] By order entered on February 19, 1998, the appellant was sentenced to 50 years in the West Virginia State Penitentiary.

## II.

█ The appellant claims that the circuit court violated Article III, Section 5 of the West Virginia Constitution by sentencing her to a term of 50 years for attempted aggravated robbery. In other words, the appellant asserts that her 50-year sentence for attempted aggravated robbery is excessive and disproportionate to the character and degree of the offense she committed.

> Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offense.'

Syllabus Point 8, *State v. Vance*, 164 W.Va. 216, 262 S.E.2d 423 (1980).

█ This Court has set forth two tests for determining whether a sentence is so disproportionate that it violates our constitution.[3] In *State v. Cooper*, 172 W.Va. 266, 272, 304 S.E.2d 851, 857 (1983), we stated that:

---

**2.** Yoney and Swafford were separately convicted of murder. Yoney was sentenced to life in prison with mercy, while Swafford received a sentence of life in prison with no mercy.

**3.** We note that "[s]entences imposed by the trial court, if within statutory limits and if not based on some impermissible factor, are not subject to appellate review." Syllabus Point 4, *State v. Goodnight*, 169 W.Va. 366, 287 S.E.2d 504 (1982). However, sentences imposed under stat-

utes with no upper limits may be challenged on the grounds that they violate the principle of proportionality contained in Article III, Section 5 of the West Virginia Constitution. *State v. Rogers*, 167 W.Va. 358, 360, 280 S.E.2d 82, 84 (1981). In this case, the appellant was sentenced pursuant to W. Va.Code § 61–2–12 (1961), which provides that an individual convicted of attempted aggravated robbery "shall be confined to the penitentiary not less than 10 years."

The first [test] is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher*, [166] W.Va. [523], 276 S.E.2d 205 (1981):

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

■ To determine whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense. *State v. Phillips*, 199 W.Va. 507, 513, 485 S.E.2d 676, 682 (1997). In this case, the crime which the appellant committed was not only of a violent nature, but resulted in the death of the victim. Although the appellant did not personally shoot Hundley, she was responsible for setting the chain of events in motion that led to his death. It was the appellant that invited Yoney and Swafford to accompany her and her friends to Hundley's house on the night of June 7, 1997. In imposing the sentence upon the appellant, the sentencing court commented:

> The crime in which you were involved and the crime for which you stand convicted was of a violent nature. It was of dangerous proportions. It was clearly deliberate. No matter what all that can be said back and forth, it was a deliberate plan or scheme that you and Toulouzi [sic] and the

others engaged in, to take money from the victim.

Based upon the violent nature of the crime for which the appellant stands convicted and the fact that the victim died as a result of the appellant's actions, we find that the sentence imposed upon her does not shock the conscience of the court and society. Consequently, we proceed to the objective test.

■ The first consideration of the objective test is the nature of the offense for which the appellant was convicted and the legislative purpose behind the statutory punishment. As we just noted, the crime for which the appellant was convicted was certainly of a violent nature. In addition, we have previously observed that "[a]ggravated robbery in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved." *State v. Ross*, 184 W.Va. 579, 582, 402 S.E.2d 248, 251 (1990).[4] As a result, the Legislature has provided circuit courts with broad discretion in sentencing individuals convicted of aggravated robbery or attempted aggravated robbery. In fact, " '[t]he Legislature chose not to deprive trial courts of discretion to determine the appropriate specific number of years of punishment for armed robbery, beyond ten.' " *State v. Woods*, 194 W.Va. 250, 254, 460 S.E.2d 65, 69 (1995), *quoting State ex rel. Faircloth v. Catlett*, 165 W.Va. 179, 181, 267 S.E.2d 736, 737 (1980).

Next, we consider comparable sentences in other jurisdictions. In *Jenkins v. State*, 384 So.2d 1135 (Ala.Crim.App.1979), *cert. denied, Ex parte Jenkins*, 384 So.2d 1141 (Ala.1980), the Court of Criminal Appeals of Alabama upheld a defendant's sentence of life imprisonment for robbery. The defendant and two accomplices robbed a convenience store of three six-packs of beer, a bag of potato chips, a can of meat, some magazines and approximately $190.00. During the commission of the robbery, the store attendant was killed.

4. W.Va.Code § 61–2–12 (1961) treats aggravated robbery and attempted robbery the same for purposes of sentencing. The statute provides that "[i]f any person commit, or attempt to commit, robbery ... by striking or beating, or by other violence to the person ... he shall be guilty of a felony, and upon conviction, shall be confined in

the penitentiary not less than ten years." W.Va. Code § 61–2–12. Thus, we find cases involving convictions for aggravated robbery appropriate for discussion and consideration regarding the issue presented in this case. Nonetheless, we are mindful of the fact that appellant only pled guilty to attempted aggravated robbery.

Although the defendant did not participate in the homicide, he drove the getaway car. The court found that the sentence of life imprisonment was not so severe as to constitute cruel and unusual punishment prohibited by both the United States and Alabama constitutions.

In *State v. Hoskins*, 522 So.2d 1235 (La. App. 4 Cir.1988), the Court of Appeal of Louisiana upheld the sentences of two codefendants, Joe Hoskins and Norman Brown, who were charged with armed robbery and four counts of attempted first degree murder. The defendants were given concurrent sentences of 99 years at hard labor without the benefit of parole, probation, or suspension of sentence for the armed robbery conviction and 50 years for attempted first degree murder. The robbery occurred on August 8, 1983, when the defendants entered a Magic Mart, and at gunpoint, ordered the store manager and three employees into the back office. While Brown held the gun, Hoskins proceeded to stab the manager and cut the throats of the four victims using a knife and the broken end of a bottle. Hoskins later claimed that he was acting with the understanding that he would not have to kill anyone and that in order to satisfy Brown, who had ordered him to kill the employees, he slashed their throats. In upholding the convictions, the court noted that the trial judge had found that contrary to Hoskins' allegations, Brown had not forced him to commit the crime. The court further stated that although neither defendant had a violent history, the heinous nature of the crime exemplified the defendants' violent characters. Thus, the court determined that the sentences were not excessive because of the serious nature of the crimes committed.

The Court of Appeal of Louisiana also upheld the sentences of two defendants for two counts of armed robbery in *State v. Dozier*, 553 So.2d 931 (La.App. 4 Cir.1989), *writ denied*, 558 So.2d 567 (La.1990). Both defendants were given sentences of 99 years at hard labor without the benefit of parole, probation, or suspension of sentence on each of the armed robbery counts. One of the defendants, who was also charged with attempted murder, was sentenced to an additional 50 years of hard labor. Both defendants argued that the sentences were excessive. The convictions resulted from two robberies which occurred on the night of September 11, 1986. During the first robbery, the defendants grabbed the purse of a woman in a Wal–Mart parking lot and jumped into a truck. Witnesses thought they heard a gunshot as the perpetrators sped off. Approximately an hour later, the defendants grabbed the purse of another woman walking down a street. The victim struggled with one of the defendants until she saw him holding a gun. She turned to call for help and was shot in the back. In upholding· the convictions, the court noted the defendants were young, first offenders, but the record justified the sentences because the crimes were especially violent and endangered the lives of five people.

In *State v. Simpson*, 200 Neb. 823, 265 N.W.2d 681 (Neb.1978), the Supreme Court of Nebraska upheld a defendant's sentences of 16 ⅔ years to 50 years for robbery and life imprisonment for felony murder. The record indicated that the defendant and his sister were hitchhiking across Nebraska when they attempted to rob Fred Skiba who was giving them a ride. The defendant's sister pulled a gun on Skiba and told him to stop the car. Skiba attempted to disarm her and the gun discharged. The defendant's sister then shot Skiba in the back and he died. The defendant and his sister took Skiba's money and car and left his body on the side of the road. In his appeal, the defendant claimed that his sentence was excessive in light of the 40–year sentence his sister received upon a plea of guilty to second degree murder. However, the court found the circumstances of the crime fully justified the sentences imposed.

Finally, in *State v. Morris*, 661 S.W.2d 84 (Mo.App.1983), the Missouri Court of Appeals upheld a sentence of life imprisonment for robbery in the first degree. Roy Morris and an accomplice robbed Max Weber, on September 3, 1982, while he was walking in the parking lot of a supermarket. Weber was shoved to the pavement and Morris held a gun to his side and took his billfold. In his appeal, Morris claimed that his sentence vio-

lated the prohibition against cruel and unusual punishment contained in the Eighth Amendment of the United States Constitution and Article 1, Section 21 of Missouri's Constitution. The court noted that armed robbery is a vicious crime and that the legislature had recognized this fact by establishing a range of punishment for robbery in the first degree from "a term of years not less than ten years not to exceed thirty years, or life imprisonment." 661 S.W.2d at 85. Accordingly, the defendant's conviction was affirmed.

In considering West Virginia case law, we found several proportionality challenges to sentences arising from robbery convictions where the victim was seriously injured and/or a weapon was used during the commission of the offense. Recently, in *State v. Phillips*, 199 W.Va. 507, 485 S.E.2d 676 (1997), we upheld a 140-year sentence for two counts of aggravated robbery and one count of kidnaping. The defendant was found guilty of robbing both a Hardee's restaurant and a Rax restaurant on the same night. During each robbery, the defendant threatened the restaurant employees with an air pistol which resembled a real gun. At the Rax restaurant, the defendant grabbed an 18-year-old female employee and took her with him. In his car, the defendant instructed his hostage to give him directions to the nearest interstate highway. As the defendant and his hostage traveled north on Interstate 77, they were observed by a state trooper. A chase ensued and the defendant was eventually captured. The defendant received 45-year sentences for each robbery count and 50 years for the kidnapping count, each sentence to be served consecutively. In upholding the sentences, we noted that the trial court properly considered the violent and dangerous nature of the crimes committed. The trial court also considered the information in the pre-sentencing report which indicated that the defendant had a juvenile larceny charge, a history of substance abuse, and had been dishonorably discharged from the Navy. Based on the totality of the circumstances, we found that sentence imposed was not disproportionate to the character and degree of the offense for which the defendant was convicted.

In *State v. Woods*, 194 W.Va. 250, 460 S.E.2d 65 (1995), this Court upheld a defendant's determinate sentence of 36 years for aggravated robbery. The defendant robbed a Go–Mart store on the evening by November 27, 1992, at gunpoint. After the clerk, who was alone in the store, handed the defendant money and other items out of the cash register, the defendant grabbed her and forcibly kissed her before exiting the store. Based upon the record and the circumstances of the case, this Court found that the defendant's sentence was not disproportionate.

Likewise, in *State v. Ross*, 184 W.Va. 579, 402 S.E.2d 248 (1990), this Court upheld a defendant's 100-year sentence for attempted aggravated robbery. The defendant was also convicted of burglary and first degree sexual assault. The evidence presented by the State at trial showed that the defendant had broken into the victim's apartment on the night of March 19, 1987. When the victim came home that evening, the defendant grabbed her and sexually assaulted her. He then asked her if she had any money. While retrieving money from her purse, the victim began to scream. The victim's neighbor heard the screams and summoned the police. Thereafter, the defendant was apprehended. In upholding the defendant's conviction, this Court noted that the defendant was young and did not have a lengthy felony conviction record even though he had been arrested on numerous occasions for relatively violent and antisocial behavior. The defendant's sentence was affirmed based on the nature of the offense committed, as well as the defendant's character and previous behavior.

This Court also upheld a defendant's 60-year sentence for armed robbery of a convenience store in *State v. Spence*, 182 W.Va. 472, 388 S.E.2d 498 (1989). During the robbery, the defendant held a large kitchen-type chopping knife to the store attendant's back and demanded the cash register money. After she complied with his request, he ordered her to get down on the floor while he left. In affirming the defendant's conviction and sentence, this Court noted that the defendant had several prior convictions including one for armed robbery.

In *State v. England,* 180 W.Va. 342, 376 S.E.2d 548 (1988), this Court considered whether a defendant's life sentence for aggravated robbery was disproportionate. On November 28, 1983, the defendant entered an Exxon service station and demanded the station's money bag. When the store clerk said that the money had already been picked up for the evening, the defendant pulled out a pistol, shot at the highway, and stated that he was not "playing around." The clerk then retrieved a money bag which contained approximately $230.00. The defendant fired a second shot into the booth inside the station and inquired if there was any more money. When the clerk told him there was no more money, he fired a third shot into the telephone and left the store. After reviewing the record, this Court concluded that the defendant's life sentence was not disproportionate. This conclusion was reached based upon the defendant's prior criminal record, which included a conviction for grand larceny, as well as the indisputably violent nature of the crime.

In *State v. Brown,* 177 W.Va. 633, 355 S.E.2d 614 (1987), this Court upheld a 60–year sentence for aggravated robbery. The defendant was also convicted of first-degree sexual-abuse for which he received a one-to-five-year consecutive sentence. The defendant robbed a restaurant owner at knife point and sexually abused her before leaving the restaurant with $3700.00. In upholding the defendant's sentence, this Court once again noted the violent nature of the crime and the use of a weapon. It was also observed that the defendant had not expressed remorse for the crimes he had committed.

Similarly, in *State v. Glover,* 177 W.Va. 650, 355 S.E.2d 631 (1987), this Court upheld a 75–year sentence imposed upon a defendant who was found guilty of having severely beaten and robbed a 53–year–old chronic alcoholic while giving him a ride in a car. The victim was stripped of his coat, shoes, and socks and left unconscious on the side of the road. In upholding the defendant's sentence, we noted that "[r]obbery has always been regarded as a crime of the gravest character." 177 W.Va. at 659, 355 S.E.2d at 640 (citation omitted).

In *State v. Buck,* 173 W.Va. 243, 314 S.E.2d 406 (1984), this Court reversed a 75–year sentence for aggravated robbery based on proportionality principles The defendant and his companion struck a store proprietor from behind and robbed him of approximately $1200.00. The defendant, who was 23–years–old at the time, had a substantial juvenile record, but no adult criminal record. When his case was appealed after re-sentencing, this Court affirmed his 30–year sentence. *State v, Buck,* 178 W.Va. 505, 361 S.E.2d 470 (1987).

Finally, in *State v. Cooper,* 172 W.Va. 266, 304 S.E.2d 851 (1983), this Court found that a 45–year sentence for robbery violated the constitutional principle of proportionality. The defendant, who was 19–years–old at the time, was convicted of robbery by violence He and an accomplice beat up Robber Puhan in the early morning hours of August 31, 1980, and took $35.00 and several credit cards. After the defendant was convicted, his accomplice pled guilty to petit larceny and was sentenced to one year in the county jail. In remanding the case to the trial court for re-sentencing, this Court noted that the defendant had only one prior arrest, which was for public intoxication.

Given the offenses involved in the cases cited above, and in light of the respective sentences imposed, we believe that the appellant's sentence in the case *sub judice* is constitutionally proportionate to the character and degree of the offense for which she was convicted. We are not persuaded by the appellant's argument that the circumstances of her case are similar to those in *Cooper* and *Buck, supra.* In this regard, the appellant points out that she had no prior juvenile or adult record and was only 18–years–old at the time the offense was committed.

In *Cooper,* no weapon was involved in the crime and the victim was not seriously injured. In addition, this Court found that the record did not support the trial court's conclusion that Cooper associated with hardened criminals. To the contrary, in this case, a gun was used to commit the crime and the victim was killed. Moreover, the record supports the circuit court's consideration of the fact that the appellant had consorted with

known felons. The appellant knew that Swafford frequently carried a gun and that Talouzi was on probation for the sale and transfer of crack cocaine at the time this crime occurred.

Similarly, other factors, besides the lack of an adult criminal record, played a role in this Court's decision to reverse the defendant's sentence in *Buck*. Not only was the expression of remorse a factor in this Court's finding that Buck's sentence was disproportionate, but we also considered the sentencing disparity between the co-defendants. In this case, the appellant's sentence is not as harsh as those received by the other individuals involved in the robbery[5] and is not as harsh as that received by Buck. While the appellant will be eligible for parole in 12 ½ years, Buck faced a minimum of 25 years before he would be considered for parole. In addition, the appellant's expression of remorse during her sentencing hearing was not found credible by the circuit court. Instead, the court found that the appellant had not fully accepted responsibility for her conduct.

We also find no merit to the appellant's contention that the circuit court erred by not applying the Youthful Offender Statute, W .Va.Code § 25–4–6 (1975).[6] The application of this statute is discretionary and in this case, the circuit court determined that the appellant would not benefit from the rehabilitative atmosphere of a detention center. The record in this case establishes that in determining the appropriate sentence, the circuit court considered the violent and dangerous nature of the crime committed by the appellant. The court also reviewed the pre-sentencing report which indicated that the appellant has a substance abuse problem. Clearly, the circuit court was mindful of the appellant's age and her lack of a criminal record. The court further noted that the appellant had associated with known felons

and was in need of structured correctional treatment that could only be provided in the correctional institutional setting. Given these circumstances, we find that the appellant's sentence was appropriate and not constitutionally disproportionate.

Thus, for the reasons set forth above, we affirm the final order of the Circuit Court of Fayette County entered on February 19, 1998.

Affirmed.

Justice McGRAW dissents.

STARCHER, Chief Justice, dissenting.

(Filed Sept. 8, 1999)

In the instant case, the appellant had just turned 18. She was, in fact, the victim of a lecherous old man. While her conduct was wrong, she had no intent that an armed robbery would occur—in fact, she insisted that no gun be used in the scheme to get money from the victim.

And, after her friends committed the crime, she fully cooperated with the police and testified against the others.

She had no prior record, and there was no evidence that she had a propensity to violence.

No intent, no record, cooperated with authorities—this equals 50 years? Not under any reasonable approach to sentencing.

Upholding this 50–year sentence discourages people from cooperating with police. Upholding this sentence deprecates the principle of rehabilitation and panders to cosmetic "tough on crime" rhetoric that is overburdening our prison system.

Obviously, this young woman should have been sentenced under the provisions of our

---

5. Talouzi received a 60–year sentence. As previously noted, Yoney received a life sentence with mercy and Swafford received a life sentence with no mercy. The record does not disclose what action was taken by the State with regard to H.J.

6. W.Va.Code § 25–4–6 (1975), provides, in pertinent part:

The judge of any court with original criminal jurisdiction may suspend the imposition of sentence of any male youth convicted of or pleading guilty to a criminal offense, other than an offense punishable by life imprisonment, who has attained his sixteenth birthday but has not reached his twenty-first birthday at the time of the commission of the crime, and commit him to the custody of the West Virginia commissioner of public institutions [corrections] to be assigned to a [detention] center.

Young Adult Offenders Act, *W.Va.Code*, 25–4–1 to 12 [1999].

Finally, I note that the majority opinion is *per curiam;* therefore, it will not be substantial precedent for future arguments that an absurdly long sentence in such a case is appropriate.

Accordingly, I dissent.