**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent,**

**v.) No. 23-137** (Wyoming County CC-55-2022-F-30)

**Michael Terry Cline,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Michael Terry Cline appeals from the March 8, 2023, sentencing order of the Circuit Court of Wyoming County.[1] He argues that the circuit court erred when it denied his motion for a new trial on the basis of juror misconduct, that the circuit court plainly erred when it allowed the investigating officer to opine on the truthfulness of the victim's statement, and that his sentence for first-degree robbery was unconstitutionally disproportionate. Upon our review, finding no substantial question of law and no prejudicial error, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21(c).

The petitioner was indicted for malicious assault, wanton endangerment involving a firearm, first-degree robbery, felon in possession of a firearm, and conspiracy to commit a felony following his involvement in an altercation with Bobby Joe Trent. The felon in possession and conspiracy charges were dismissed before trial.

At trial, Wyoming County Sheriff's Department Captain Tommy Blankenship testified that on May 7, 2022, he was dispatched to a residence in Long Branch, West Virginia. Upon arrival, Captain Blankenship observed Mr. Trent covered in "a significant amount of blood" and mud, and that Mr. Trent's truck had bullet holes in it. Captain Blankenship later found bullets in the truck's radiator. Captain Blankenship explained that Mr. Trent was severely injured and having difficulty breathing and talking. Mr. Trent advised Captain Blankenship that he drove to Big Branch Mountain to purchase drugs from Rachel Paynter when he was ambushed by the petitioner, who beat Mr. Trent with an axe handle and fired a gun at his truck. Captain Blankenship went to the scene on Big Branch Mountain and found the axe handle along with pieces of a headlight and a door handle from Mr. Trent's truck.

---

[1] Petitioner appears by counsel Jeremy B. Cooper. Respondent appears by Attorney General John B. McCuskey and Assistant Attorney General Mary Beth Niday. Because a new Attorney General took office while this appeal was pending, his name has been substituted as counsel.

While Captain Blankenship testified about the axe handle, the petitioner's counsel requested a bench conference to notify the court that "the juror in the back row appears to be asleep." Counsel admitted that he did not know if the juror was sleeping but stated that the juror's "eyes have been closed for over five minutes, and he appears very comfortable." The court immediately called a recess in the proceedings, and there was no further discussion of the juror.

During Captain Blankenship's cross-examination, the petitioner's counsel asked several questions that pertained to Mr. Trent's credibility. These questions related to Mr. Trent's criminal history, his statement that he went to Big Branch Mountain to conduct a drug transaction, "the credibility or the reliability of someone who is involved in" a drug transaction, and the possibility that Mr. Trent "told two different stories" about his reason for going to Big Branch Mountain on the day in question. During the State's redirect examination of Captain Blankenship, the following exchange occurred without objection:

> **Prosecutor:** Now how many investigations have you done throughout your career?
> **Captain Blankenship:** I have done multiple investigations in my almost 23 years of law enforcement.
> **Prosecutor:** How many different witnesses have you interviewed over that timeframe?
> **Captain Blankenship:** Many witnesses, probably in the thousands.
> **Prosecutor:** Have you ever interviewed witnesses that lied to you?
> **Captain Blankenship:** Yes.
> **Prosecutor:** Have you interviewed truthful witnesses?
> **Captain Blankenship:** Yes.
> **Prosecutor:** Have you interviewed credible witnesses?
> **Captain Blankenship:** Yes.
> **Prosecutor:** Was Bobby Trent in his statement to you, was that credible?
> **Captain Blankenship:** Yes.
> **Prosecutor:** And that's based on all your training and experience over your many years as a law enforcement officer?
> **Captain Blankenship:** Yes, sir.

Mr. Trent's former girlfriend, Josetta Morgan, testified that on the day in question, she saw Mr. Trent's truck in her driveway. After a few minutes, she went to check on him and "thought he was dead." When Ms. Morgan opened the door to Mr. Trent's truck, she asked him what happened, "and he was trying to talk, but he couldn't really talk. He was just mumbling and gurgling . . . [and] the only thing he would say was 'Michael Cline.'" Ms. Morgan testified that Mr. Trent was unable to get out of the truck, his condition was "[v]ery bad, dead-like," and she called 9-1-1. An EMT who was dispatched to assess Mr. Trent's injuries testified that he had a potentially life-threatening injury because of the amount of blood coming from his nose.

Then, Mr. Trent gave his account of events, including explaining that he drove to Big Branch Mountain to purchase drugs from Ms. Paynter. He testified that when he exited his truck, the petitioner came running and started hitting and stomping him. The petitioner "started getting winded" from the beating, so he retrieved an axe handle from the back of Mr. Trent's truck and

beat him with it. Mr. Trent described how he crawled underneath the truck to escape the petitioner's attack, but the petitioner got a chain out of the back of the truck "to hook it to [the] truck and drag my truck off the top of me . . . [s]o he could kill me." Mr. Trent was able to get into his truck and started to drive away when the petitioner fired several shots at him with a gun. Mr. Trent heard bullets hitting his truck, but he escaped and drove to Ms. Morgan's residence. Mr. Trent said that he was in "[e]xcruciating pain" and had to have multiple surgeries on his face. As a result of the attack, Mr. Trent lost all his teeth and suffered a deformed nose, three broken ribs, and two holes in his lungs. Mr. Trent also testified that the petitioner took the following property from him after the attack: $200 in cash, a weed eater, shoes, and various tools. The petitioner extensively cross-examined Mr. Trent about his drug use and its effect on the credibility of his testimony.

The petitioner testified as the sole defense witness and denied any involvement in the incident. After hearing all of the evidence, the jury convicted him of malicious assault, wanton endangerment involving a firearm, and first-degree robbery. The petitioner moved for a new trial, arguing that "it appeared" the juror had fallen asleep. The circuit court found no trial error and denied this motion.

At sentencing, the court noted that the petitioner had several prior convictions for violent felonies and sentenced him to consecutive terms of eighty years of imprisonment for first-degree robbery, two to ten years of imprisonment for malicious assault, and one to five years of imprisonment for wanton endangerment involving a firearm. The petitioner appeals.

First, the petitioner argues that the circuit court erred in denying his motion for a new trial because a juror appeared to be sleeping during witness testimony. We review the court's denial of a motion for a new trial for an abuse of discretion. *See* Syl. Pt. 3, *State v. Vance*, 207 W. Va. 640, 535 S.E.2d 484 (2000). We have long held that "'[m]isconduct of a juror, prejudicial to the complaining party, is sufficient reason to direct a mistrial or to set aside a verdict returned by the jury of which he is a member.' Syllabus point 3, *Legg v. Jones*, 126 W. Va. 757, 30 S.E.2d 76, 77 (1944)." Syl. Pt. 1, *State v. Trail*, 236 W. Va. 167, 778 S.E.2d 616 (2015). We have also held that

> "[i]n the absence of any evidence that an interested party induced juror misconduct, no jury verdict will be reversed on the ground of juror misconduct unless the defendant proves by clear and convincing evidence that the misconduct has prejudiced the defendant to the extent that the defendant has not received a fair trial." Syllabus point 3, *State v. Sutphin*, 195 W. Va. 551, 466 S.E.2d 402 (1995).

*Id.* at 171, 778 S.E.2d at 620, Syl. Pt. 2. To justify a new trial, the petitioner had the burden of proving by clear and convincing evidence that he was prejudiced by the juror's conduct, but he did not request a hearing on this issue at trial. *See id.* at 554, 466 S.E.2d at 405, Syl. Pt. 3. Moreover, he does not argue on appeal that he was prejudiced by this. Because the petitioner has not demonstrated prejudice, we conclude that the court did not abuse its discretion when it denied the motion for a new trial.

Further, we have held that "where there are allegations of any private communication, contact, or tampering, directly or indirectly, with a juror . . . it is the duty of the trial judge upon

3

learning of the alleged communication, contact, or tampering, to conduct a hearing as soon as is practicable" to determine if the petitioner was denied a fair trial. *Sutphin*, 195 W. Va. at 553-54, 466 S.E.2d at 404-05, Syl. Pt. 2, in part. Here, the petitioner argues that the circuit court should have sua sponte conducted a hearing to investigate the issue of the allegedly sleeping juror. But the petitioner does not contend, nor does the record reflect, that anyone induced the juror to sleep during the trial. Because the petitioner failed to present any evidence of "any private communication, contact, or tampering" with the juror, the court did not abuse its discretion by failing to sua sponte order a hearing on this issue. *Id.* at 404, 466 S.E.2d at 554, Syl. Pt. 2.

Second, the petitioner argues that the circuit court plainly erred when it allowed Captain Blankenship to testify to his opinion that Mr. Trent provided a credible statement to law enforcement. In a trial, the jury "is the sole judge as to . . . witness credibility." Syl. Pt. 2, *State v. Bailey*, 151 W. Va. 796, 155 S.E.2d 850 (1967). The petitioner did not object to Captain Blankenship's testimony, but he contends that the admission of this testimony amounted to plain error. Generally, "'the failure of a litigant to assert a right in the trial court likely will result' in the imposition of a procedural bar to an appeal of that issue." *State v. Miller*, 194 W. Va. 3, 17, 459 S.E.2d 114, 128 (1995) (citation omitted). However, this Court may use the plain error doctrine to correct "particularly egregious errors." *Id.* at 18, 459 S.E.2d at 129 (citation omitted). To establish plain error, "there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* at 7, 459 S.E.2d at 118, Syl. Pt. 7, in part. And even if the petitioner "establishe[s] the first three requirements of *Miller*," we are not required to correct the error "unless a fundamental miscarriage of justice has occurred." *State v. Marple*, 197 W. Va. 47, 52, 475 S.E.2d 47, 52 (1996).

In this case, even if admitting the testimony was erroneous, we simply cannot conclude that the testimony seriously affected the fairness, integrity, or public reputation of the judicial proceedings. This isolated bit of testimony occurred in the midst of a trial with significant evidence of the petitioner's guilt. Accordingly, we do not find plain error.

Finally, the petitioner contends that his eighty-year sentence of imprisonment for first-degree robbery is constitutionally disproportionate under the Eighth Amendment to the United States Constitution and Article III, Section 5 of the West Virginia Constitution. The petitioner generally acknowledges that this Court has affirmed longer sentences for first-degree robbery, and he attempts to distinguish this case from *Hatcher v. McBride*, 221 W. Va. 760, 656 S.E.2d 789 (2007), in which we ruled that a 212-year sentence for first-degree robbery was not constitutionally disproportionate. The petitioner also argues that an eighty-year sentence "exceeds the criminal liability imposed for many far more severe acts under West Virginia law," such as first-degree sexual abuse and first-degree arson.

We review "sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997). "Where the issue involves the application of constitutional protections, our review is de novo." *State v. Patrick C.*, 243 W. Va. 258, 261, 843 S.E.2d 510, 513 (2020). *See, e.g.*, Syl. Pt. 8, *Dean v. State*, 230 W. Va. 40, 736 S.E.2d 40 (2012) ("A review of a proportionality determination made pursuant to the Excessive Fines Clause of the West Virginia Constitution is de novo."). Furthermore, "Article III, Section 5 of the West Virginia Constitution,

which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.'" Syl. Pt. 8, *State v. Vance*, 164 W. Va. 216, 262 S.E.2d 423 (1980). We ordinarily limit proportionality reviews to sentences "where there is either no fixed maximum set by statute or where there is a life recidivist sentence." Syl. Pt. 4, in part, *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 276 S.E.2d 205 (1981). West Virginia Code § 61-2-12(a)(1) sets forth no fixed maximum term for first-degree robbery, accordingly, we turn to the petitioner's argument on appeal.

We apply two tests to evaluate the proportionality of a sentence. "The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry need not proceed further." *State v. Cooper*, 172 W. Va. 266, 272, 304 S.E.2d 851, 857 (1983). Considering that Mr. Trent was violently beaten and seriously injured, robbed, and shot at while trying to flee the attack, along with the petitioner's prior convictions for attempt to commit robbery, burglary, breaking and entering, and entering without breaking, we conclude that the petitioner's sentence does not shock the conscience.

The second test is an objective inquiry, requiring us to give consideration "to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction." *Id.* (quoting *Wanstreet*, 166 W. Va. at 523-24, 276 S.E.2d at 207, Syl. Pt. 5). In another robbery case, this Court explained that

> [t]he first consideration of the objective test is the nature of the offense for which the appellant was convicted and the legislative purpose behind the statutory punishment. As we just noted, the crime for which the appellant was convicted was certainly of a violent nature. In addition, we have previously observed that "[a]ggravated robbery in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved." *State v*[.] *Ross*, 184 W.Va. 579, 582, 402 S.E.2d 248, 251 (1990). As a result, the Legislature has provided circuit courts with broad discretion in sentencing individuals convicted of aggravated robbery or attempted aggravated robbery. In fact, "'[t]he Legislature chose not to deprive trial courts of discretion to determine the appropriate specific number of years of punishment for armed robbery, beyond ten.'" *State v. Woods*, 194 W.Va. 250, 254, 460 S.E.2d 65, 69 (1995) [(]quoting *State ex rel. Faircloth v. Catlett*, 165 W.Va. 179, 181, 267 S.E.2d 736, 737 (1980)[)].

*State v. Williams*, 205 W. Va. 552, 555, 519 S.E.2d 835, 838 (1999). In *Williams*, this Court considered sentences for robbery that were upheld in numerous jurisdictions and found that "[g]iven the offenses involved in the cases cited above, and in light of the respective sentences imposed, we believe that the appellant's sentence in the case *sub judice* is constitutionally proportionate to the character and degree of the offense for which she was convicted." *Id.* at 558, 519 S.E.2d at 841. Applying these principles, we conclude that petitioner's sentence was

constitutionally proportionate to the character and degree of the offense for which he was convicted.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 11, 2025

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn
Justice Charles S. Trump IV

**DISSENTING:**

Chief Justice William R. Wooton


Wooton, Chief Justice, dissenting:

I respectfully dissent, as I believe this case should have been placed on the Court's Rule 19 docket for oral argument and an in-depth review of the record. In my view, the majority is far too quick to conclude that the testimony of Captain Blankenship, which the majority does not even attempt to justify, did not "seriously affect[] the fairness, integrity, or public reputation of the judicial proceedings." *State v. Miller*, 194 W. Va. 3, 7, 459 S.E.2d 114, 118 (1995).

The State's questioning of Captain Blankenship was unquestionably designed to qualify him as an expert in the determination of witness credibility, a clear violation of

> "the law in West Virginia [which] does not allow an expert to give an opinion regarding the credibility of a witness. It is a well-established legal principle in this State that '[t]he jury is the trier of the facts and in performing that duty it is the sole judge as to the weight of the evidence and the credibility of the witnesses.'"

*State v. Martin*, 224 W. Va. 577, 582, 687 S.E.2d 360, 365 (2009) (citing Syl. Pt. 2, *State v. Bailey*, 151 W. Va. 796, 155 S.E.2d 850 (1967). To the contrary, the only way a witness's credibility can be rehabilitated is by "testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." *See* W. Va. R. Evid. 608(a).

6

Even on plain error review, I would be reluctant to conclude that the testimony of a police officer – a respected authority figure – telling the jury that in his opinion the State's key witness was credible, was not unduly prejudicial. The majority's conclusory opinion has not convinced me otherwise.

Accordingly, I respectfully dissent.