# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0957** (Upshur County 19-F-34)

**Lamere S. Troup,**
**Defendant Below, Petitioner**

**FILED**

**December 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Lamere S. Troup, by counsel David C. Fuellhart, appeals the Circuit Court of Upshur County's September 20, 2019, sentencing order entered following his pleas of guilty to malicious assault and first-degree robbery. Respondent State of West Virginia, by counsel Lara K. Bissett, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On February 22, 2018, police received a call about a disturbance at the Colonial Motel in Buckhannon, West Virginia. Once at the motel, officers found blood on the floor in Room 56, and they found a male who identified himself as Michael Harris. However, they discovered that was a false name and that individual was actually Petitioner Lamere S. Troup. Upon entering the bathroom, an officer found the victim, Frank Hall, covered in blood with a swollen left eye, zip tie on one wrist, and duct tape on his wrist and ankles. Upon further inspection, officers discovered pepper spray, a knife, additional zip ties, a ski mask, gloves, and a loaded gun. Mr. Hall told an officer that his sister, Michaelina Sarne, had texted him earlier in the day stating that she was at the Colonial Motel and would like to see him. According to Mr. Hall, while he was there with his sister, two men wearing ski masks entered the room, duct taped his feet and arms at gunpoint, and demanded money from him. Mr. Hall was stabbed multiple times, in addition to being pistol whipped and kicked by petitioner, rendering him unconscious. Petitioner identified co-defendant Takiese Naceer Bethea as the person who stabbed Mr. Hall. Medical records show that Mr. Hall suffered multiple lacerations, facial swelling, and a broken nose.

Ms. Sarne initially claimed she was also a victim, and she denied knowing Mr. Bethea or

1

petitioner. However, petitioner told officers that Ms. Sarne had offered him $10,000 to drive to West Virginia with Ms. Sarne and another man, later identified as Mr. Bethea, to rob Mr. Hall. Petitioner said that the group bought duct tape at a Rite Aid in New Jersey, where petitioner lived, and also bought gloves, a ski mask, zip ties, and mace at Wal-Mart stores in New Jersey and Maryland. He further told officers that Ms. Sarne's daughter, Alayna Puglia, drove them to West Virginia and stayed in the car while the others were in the motel room with Mr. Hall. A search of Ms. Sarne's cell phone showed that Mr. Hall texted her a picture of a bag of money on February 13, 2018, indicating that he had just received $60,000. On February 15, 2018, Ms. Sarne texted Mr. Bethea, "You wanna make sum cash??" He replied, "Don't ialways." On February 22, 2018, Mr. Bethea texted Ms. Sarne, asking, "me u n my boy making the trip?"

Petitioner and his co-defendants were indicted on January 15, 2019. Petitioner was indicted of kidnapping, first-degree robbery, conspiracy, and malicious assault. Co-defendant Mr. Bethea was indicted of identical crimes. Co-defendant Ms. Sarne was indicted of kidnapping, first-degree robbery, and conspiracy while co-defendant Ms. Puglia was indicted for conspiracy.[1]

Petitioner pled guilty to first-degree robbery and malicious assault. According to petitioner's recitation of facts, petitioner "was informed of his rights through a Petition to Enter Plea of Guilty, and entered into the plea agreement knowingly and voluntarily." Prior to imposing sentence, the circuit court directed that a presentence investigation ("PSI") be conducted. In his written statement to the probation officer as part of the PSI, petitioner asserted that he became involved in the "torture scheme" to get money to pay off his debts. He also said that he was "fooled into believing [he] was going to Virginia and we were going to scare the victim into giving up the money he was bragging about to his sister." Further, petitioner admitted barging into the room with the gun pointed at Mr. Hall while Mr. Bethea pepper sprayed Mr. Hall. Petitioner stated that he zip-tied Ms. Sarne and took her into the bathroom to make it look like she was also a victim. He helped drag Mr. Hall into the room after Mr. Hall tried to escape, pistol whipped him, and kicked him. According to the PSI report, petitioner had a record of five juvenile offenses in New Jersey: receiving stolen property, burglary, resisting arrest, unlawful taking by means of conveyance, and unlawful possession of a weapon. As an adult, he had prior criminal charges in New Jersey for receiving stolen property in 2012 and 2014, terroristic threats, possession of weapons for unlawful purposes, unlawful possession of a weapon, possession of a controlled substance, and burglary. According to the PSI report, petitioner admitted abusing alcohol and drugs, including marijuana, Percocet, and Xanax. In addition, the PSI report indicated that petitioner accepted responsibility for and expressed remorse for the crimes but that he "appears to lack the understanding of living a prosocial lifestyle."

During the September 4, 2019, sentencing hearing, the circuit court acknowledged that petitioner was the only defendant who had been honest about what happened, even noting that petitioner had been very respectful. It went on to find, however, that it could not overlook the seriousness of the offense, pointing out that Mr. Hall was lucky to be alive given that he was bound, beaten, stabbed, and held at gunpoint. After reviewing the PSI report and noting petitioner's

---

[1] Mr. Bethea's sentence is the same as petitioner's; Ms. Sarne was sentenced to one to five years of incarceration pursuant to her plea of guilty to a single count of conspiracy; and Ms. Puglia was sentenced to one year in jail on a misdemeanor count of accessory after the fact.

criminal history, the circuit court entered its September 20, 2019, sentencing order ordering that petitioner be confined in the state penitentiary for a determinate period of thirty-six years for first-degree robbery and two to ten years for malicious assault, with the sentences to run consecutively. In return for the entry of the guilty pleas, the State moved to nolle prosequi the remaining charges in the indictment, and the circuit court granted that motion, dismissing those charges.[2] Petitioner appeals from that sentencing order.

As we have previously stated,

> "'[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010).

Syl. Pt. 1, *State v. Varlas*, -- W. Va. --, 844 S.E.2d 688 (June 11, 2020).

On appeal, petitioner asserts two assignments of error. Because both alleged errors relate to sentencing, we will address them together. Petitioner first argues that the circuit court erred by sentencing petitioner to an unconstitutionally disproportionate sentence. Petitioner asserts that his sentence for first-degree robbery shocks the conscience and is so offensive that it cannot pass a societal and judicial sense of justice. He contends that this case is comparable to *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983), and *State v. Buck*, 173 W. Va. 243, 314 S.E.2d 406 (1984). In *Cooper*, this Court set aside a forty-five-year sentence for first-degree robbery, in part, because the defendant was just nineteen years old and because the probation officer recommended a minimum sentence. *Id.* at 272, 304 S.E.2d at 857. In *Buck*, this Court set aside a seventy-five-year sentence for first-degree robbery because "the offense having been the first crime of violence committed by the defendant and based upon the defendant's expression of remorse and offer to pay restitution to the victim." *State v. Mann*, 205 W. Va. 303, 316, 518 S.E.2d 60, 73 (1999). Petitioner argues that the similarities between those cases and his own outweigh the differences, as petitioner was just twenty-four at the time of the offense and the State recommended the minimum sentence. He argues that, as in *Buck*, this is the first crime of violence committed by petitioner, though petitioner has a criminal history that includes convictions for crimes that he admits "could be considered as having the potential for violence, he does not have any previous charges for actual physical violence."[3] Like in *Buck*, petitioner expressed what he calls "great

---

[2] Petitioner filed a Rule 35(b) motion for reconsideration of his sentence, but the circuit court denied that motion by order entered on October 15, 2019.

[3] Petitioner fails to cite to the record for these, and many other, factual assertions. Therefore, we remind petitioner's counsel of this Court's requirements set forth in Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, which provides as follows:

> The brief must contain an argument exhibiting clearly the points of fact and law presented . . . and citing the authorities relied on . . . . The argument must contain appropriate and specific citations to the record on appeal, including citations that

remorse" for his actions, going into "great detail regarding his actions and apologized multiple times for his actions."

Petitioner next argues that his sentence is unconstitutionally disproportional under the objective test set forth in *Wanstreet v. Bordenkircher,* 166 W. Va. 523, 276 S.E.2d 205 (1981). While he admits that first-degree robbery is not a minor offense, he again points to his young age, show of remorse, and lack of violent criminal history. Without setting forth any other specifics, petitioner argues that "[w]hile certain facts of the instant case do not weigh for [p]etitioner, the totality of circumstances regarding the nature of the offense committed weigh in favor of [p]etitioner and a disproportional sentence." He admits, however, that the comparison of punishment in other jurisdictions weighs against him. While acknowledging that this Court has upheld greater sentences for first-degree robbery than petitioner received, he reiterates his comparisons to *Cooper* and *Buck*, claiming that somehow the similarity weighs in his favor such that his sentence is unconstitutionally disproportional. Finally, he asserts that because his sentence is both subjectively and objectively disproportional under this Court's precedent, the circuit court erred in imposing his sentence.

In his second assignment of error, petitioner argues that his sentence is unconstitutionally disproportionate to the sentences given to two of his co-defendants. In support of that contention, he points to the sentences imposed upon Ms. Puglia and Mr. Bethea. However, because petitioner and Mr. Bethea pled to identical charges and received identical sentences, this Court presumes that petitioner actually contends that his sentence is disproportionate to the sentences imposed upon Ms. Puglia and Ms. Sarne. Petitioner fails to cite to the record in support of any of his assertions regarding the alleged disproportionate sentences of his co-defendants, continuing to ignore Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure.

This Court has long held that

[d]isparate sentences for co-defendants are not per se unconstitutional. Courts consider many factors such as co-defendants' respective involvement in the criminal transaction (including who was the prime mover), prior records, rehabilitative potential (including post-arrest conduct, age and maturity), and lack of remorse. If defendants are similarly situated, some courts will reverse on disparity of sentence alone.

*Cooper*, 172 W. Va. at 271-72, 304 S.E.2d at 856. As this Court further explained in *Cooper*,

[t]here are two tests to determine whether a sentence is so disproportionate to a crime that it violates our constitution. *Accord, Stockton v. Leeke,* 269 S.C. 459, 237 S.E.2d 896, 897 (1977). The first is subjective and asks whether the sentence for the particular crime shocks the conscience of the court and society. If a sentence is so offensive that it cannot pass a societal and judicial sense of justice, the inquiry

---

pinpoint when and how the issues in the assignments of error were presented to the lower tribunal. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

need not proceed further. When it cannot be said that a sentence shocks the conscience, a disproportionality challenge is guided by the objective test we spelled out in Syllabus Point 5 of *Wanstreet v. Bordenkircher,* 166 W.Va. 523, 276 S.E.2d 205 (1981):

> In determining whether a given sentence violates the proportionality principle found in Article III, Section 5 of the West Virginia Constitution, consideration is given to the nature of the offense, the legislative purpose behind the punishment, a comparison of the punishment with what would be inflicted in other jurisdictions, and a comparison with other offenses within the same jurisdiction.

*Cooper* at 272, 304 S.E.2d at 857.

As set forth above, petitioner's and Mr. Bethea's violent actions in perpetrating the crimes were far more extensive than any involvement by Ms. Sarne or Ms. Puglia. Thus, we cannot find that petitioner was similarly situated with the female co-defendants. In fact, he admitted pointing a gun at Ms. Sarne during the commission of the crime and does not dispute that Ms. Puglia remained outside while he and the others were inside the motel. When Mr. Hall tried to flee, petitioner was involved in preventing the escape and taking measures to ensure that Mr. Hall could not try to escape again. While petitioner's young age and honesty with the circuit court were factors the circuit court considered, as that court found during petitioner's sentencing hearing, it could not

> overlook the serious nature of this offense. I mean, you got a guy that's probably lucky he's not dead from what was described happened in this case. I mean, he was - - he was bound, he was stabbed, he was beat, he had a gun pointed at []his head, I mean, this is about as serious as it gets.

The circuit court also considered petitioner's earlier charges in New Jersey, including burglary, possession of a controlled substance, terroristic threats, possession of a weapon for unlawful purposes, and unlawful possession of weapon. It also noted that according to the PSI petitioner had absconded from his probation supervision, which the court deemed unacceptable. Therefore, the circuit court's implicit finding that petitioner was not similarly situated as to the female defendants was not erroneous.

We also find that the sentence does not shock the conscience. As we have repeatedly found, "'[i]n making the determination of whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense.' *State v. Adams*, 211 W. Va. 231, 233, 565 S.E.2d 353, 355 (2002)." *State v. Patrick C.*, -- W. Va. --, 843 S.E.2d 510, 515 (Feb. 25, 2020). As set forth above, this violent crime was planned out with sufficient time to travel across several states, purchasing items the group deemed necessary for the commission of the crime at more than one location. Mr. Hall was violently attacked and suffered multiple lacerations, facial swelling, and a broken nose. Petitioner admitted that he attempted to rob Mr. Hall, in addition to zip-tying him and pointing a gun at Mr. Hall and Ms. Sarne. Petitioner informed the circuit court that he assaulted Mr. Hall by hitting him in the face with the butt of the gun. Thus, it is clear that petitioner played a significant role in perpetrating the crime against Mr. Hall without any provocation by Mr. Hall.

With regard to the objective test, we have held:

> The first consideration of the objective test is the nature of the offense for which the appellant was convicted and the legislative purpose behind the statutory punishment. As we just noted, the crime for which the appellant was convicted was certainly of a violent nature. In addition, we have previously observed that "[a]ggravated robbery in West Virginia has been recognized as a crime that involves a high potentiality for violence and injury to the victim involved." *State v. Ross,* 184 W.Va. 579, 582, 402 S.E.2d 248, 251 (1990). As a result, the Legislature has provided circuit courts with broad discretion in sentencing individuals convicted of aggravated robbery or attempted aggravated robbery. In fact, "'[t]he Legislature chose not to deprive trial courts of discretion to determine the appropriate specific number of years of punishment for armed robbery, beyond ten.'" *State v. Woods,* 194 W.Va. 250, 254, 460 S.E.2d 65, 69 (1995), *quoting State ex rel. Faircloth v. Catlett,* 165 W.Va. 179, 181, 267 S.E.2d 736, 737 (1980).

*State v. Williams*, 205 W. Va. 552, 555, 519 S.E.2d 835, 838 (1999). In *Williams*, this Court considered sentences for robbery that were upheld in numerous jurisdictions to find that "[g]iven the offenses involved in the cases cited above, and in light of the respective sentences imposed, we believe that the appellant's sentence in the case *sub judice* is constitutionally proportionate to the character and degree of the offense for which she was convicted." *Id.* at 558, 519 S.E.2d at 842. Applying those findings to the facts of this matter and petitioner's sentences imposed by the circuit court, we find that petitioner's sentence does not shock the conscience and should be affirmed. We, therefore, affirm the circuit court's September 20, 2019, sentencing order.

Affirmed.

**ISSUED:** December 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison