# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 19-0316** (Fayette County 18-F-169)

**Michael R. Hodge Jr.,**
**Defendant Below, Petitioner**

**FILED**

**January 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Michael R. Hodge Jr., by counsel Robert P. Dunlap II, appeals the Circuit Court of Fayette County's February 28, 2019, sentencing and commitment order. Respondent the State of West Virginia, by counsel Mary Beth Niday, filed a response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 28, 2017, minor S.J. drove petitioner, Bryan Allen, and Jarrell Green to an area near the home of Angelia Miranda Danielle Pyatt ("Miranda") and Miranda's then-boyfriend and later husband, Noah Pyatt, in Fayetteville, West Virginia.[1] That home was located on a dead-end road and was surrounded by woods. Around that time, Miranda let the dog outside; the dog immediately ran to the woods and began barking. As Miranda left the porch to yell for the dog, she was approached by three African American men, later identified as petitioner, Mr. Allen, and Mr. Green, wearing full face black ski masks and black clothing. They reportedly approached her from the front, surrounded her, and shot her in the chest without speaking. Miranda fell to the ground but struggled with the shooter to grab the firearm; she fired two shots while on the ground, striking one of the men. The injured man ran toward the woods after being shot, but the other two men struck Miranda in the head and face before fleeing. Miranda was able to return to her house

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

and lock the door. Mr. Pyatt returned to the home approximately two minutes later and rushed Miranda to the hospital, calling 9-1-1 along the way. Miranda suffered a gunshot to the right side of her rib cage, which exited through her lower back. She had a burn under her breast from the barrel of the gun. She described the firearm as a black machine gun.

Sergeant Willis of the Fayette County Sheriff's Department responded to the 9-1-1 call and met Miranda at Plateau Medical Center before she was transferred to Charleston Area Medical Center, where she was examined by Dr. Shane Monnett. He determined that the gunshot did not hit any major organs and surgery was not required. Sgt. Willis received a second 9-1-1 call later that night from A.J., S.J.'s mother, who reported that a person had been shot in a drive-by shooting in the Whipple Scarbro area of Fayette County and had been transported to Raleigh General Hospital. Sgt. Willis later determined that the subject of that call was Mr. Green; Mr. Green subsequently acknowledged his involvement in the incident at Miranda's residence. When Sgt. Willis spoke with A.J. and S.J. on August 29, 2017, both women identified petitioner, Mr. Allen, and Mr. Green as the men involved in the shooting at Miranda's. At that time, S.J. was involved in a romantic relationship with petitioner, who was arrested for malicious assault while hiding in the A.J. and S.J.'s residence. Bryan Allen was arrested shortly thereafter on the same charge.

When petitioner was arrested, Sgt. Willis did not find any weapons on his person, but petitioner had a cell phone in his pocket. That phone was seized and taken to the sheriff's department. Corporal Pack helped Sgt. Willis package the cell phone and label it at the office. Cpl. Pack asked petitioner for the passcode to his phone, and petitioner provided the code after he was Mirandized.[2] In January of 2018, Sgt. Willis obtained a search warrant, and Forensics Specialist Mason Hines downloaded the contents of petitioner's cell phone, where he discovered photographs dated August 5, 2017. Those photographs showed petitioner holding what appeared to be an assault rifle; google searches for Mr. Pyatt's address; a text message from petitioner on August 25, 2017, that petitioner had found Mr. Pyatt's house; and reports that indicated petitioner's phone connected to a wireless router in Oak Hill at 10:00 p.m. on August 28, 2017, and again at 12:29 a.m. on August 29, 2017.

On August 29, 2017, Mr. Pyatt gave Sgt. Willis consent to search the residence he shared with Miranda. During that search, a spent .22 casing was found on a mat on the front porch, which was promptly secured. S.J. also informed Sgt. Willis that Bryan Allen had tossed an assault rifle into a wooded area in Mt. Hope. A.J. retrieved the weapon, a Mossberg .22 caliber rifle, and took it to Sgt. Willis around October 5, 2017. At that time, the rifle did not have any ammunition or magazines. It was sent off for comparison to the .22 casing found at Miranda's residence. That analysis was performed by Ryan Christopher, a forensic analyst with the West Virginia State Forensics Laboratory, on August 6, 2018. He determined that the casing was from the recovered firearm. Sgt. Willis requested a firearms trace from the ATF, which revealed that petitioner had purchased the rifle at a pawn shop on August 5, 2017, as matched by serial numbers.

Jarrell Green told police that S.J. drove petitioner and Mr. Allen to Mr. Green's house and that petitioner asked if Mr. Green wanted to rob Mr. Pyatt and Miranda the next day. Mr. Green

---

[2] Petitioner denies providing the passcode to the cell phone to officers, but he did not provide an alternative theory as to how the officers accessed the material on the phone.

2

responded that they should do it then to get it over with. Petitioner, Mr. Allen, and S.J. told Mr. Green that the residence was targeted because Mr. Pyatt had guns and flashed money on Snapchat. Mr. Green went with Mr. Allen, S.J., and petitioner to Mr. Allen's house, where they got their "guns and stuff ready" before proceeding to Miranda's residence. The three men wore black clothing and face coverings, and petitioner showed Mr. Green a gun in the trunk of S.J.'s car that petitioner said was an automatic rifle. S.J. drove the men to a dirt road approximately ten to fifteen yards from Miranda's residence, and S.J. remained in the car while the men ran through the woods. Mr. Green remembered only that the men came within four or five yards of the front porch and then remembered Miranda fighting with petitioner and Mr. Allen over the gun, at which time shots were fired, Mr. Allen punched Miranda, and Mr. Green was shot in the right leg near his ankle. Mr. Green began running back to the car. He did not recall what petitioner did with the rifle after the incident. S.J. drove the men to her mother's house where Mr. Green's leg was wrapped in a scarf and an ambulance was called. Petitioner reported to medical personnel that Mr. Green was a victim of a drive-by shooting in Whipple. However, S.J., petitioner, and Mr. Allen left A.J.'s home before law enforcement arrived.[3]

Petitioner was indicted of conspiracy to commit a felony, attempted robbery, malicious assault, attempted murder, wanton endangerment involving a firearm, and assault in the commission of a felony. He filed a motion to suppress any statements given to law enforcement and any evidence obtained from his cell phone. Petitioner also sought to sever his trial from that of his co-defendants. Following a hearing on those motions, the circuit court denied the same. Petitioner was tried before a jury on December 11 and 12, 2018, and was convicted of conspiracy to commit a felony, attempted robbery in the first degree, malicious assault, and assault during the commission of a felony. He was sentenced to an indeterminate term of one to five years of incarceration and a fine for conspiracy; a determinate term of seventy-five years for attempted robbery; an indeterminate term of two to ten years for malicious assault; and an indeterminate term of two to ten years and a fine for assault during the commission of a felony, with credit for time served. Petitioner's sentences were ordered to run consecutively.[4] Petitioner appeals from the circuit court's February 28, 2019, sentencing and commitment order.

"The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a

---

[3] Mr. Green entered a plea of guilty to conspiracy to commit a felony with a condition to testify truthfully about the events resulting in the indictments against himself, Mr. Allen, and petitioner.

[4] While petitioner was just twenty years old at the time of sentencing, the circuit court noted that petitioner's criminal history "is one of violence, including, but not limited to, battery on a police officer and battery on an inmate in the Southern Regional Jail." In its order, the circuit court set forth its belief that petitioner "used his gun in the crime, and he was the one who came up with the scheme to rob [Miranda and Mr. Pyatt . . . Petitioner] chose to take a gun to the robbery and raise the stakes." It further found that petitioner "has shown no remorse for his actions. [Petitioner's] history is too violent for [petitioner] to be a candidate for the Anthony Center. Placing [petitioner] on probation or granting an alternative sentence would unduly depreciate the seriousness of these crimes."

deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997).

Syl. Pt. 1, *State v. Wasson*, 236 W. Va. 238, 778 S.E.2d 687 (2015). "Additionally, we have consistently held that '[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syl. pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982)." *State v. Bleck*, -- W. Va. --, --, 843 S.E.2d 775, 779 (2020).

On appeal, petitioner asserts seven assignments of error. First, he contends that the circuit court erred by admitting his statement in violation of his constitutional rights because his statement was taken without his full understanding of his rights. Cpl. Pack began reading petitioner his rights and asked petitioner if he understood that he had a right to remain silent until he had an attorney present. Petitioner asked, "[W]hat did they mean by that?" In discussing the issue with Cpl. Pack, petitioner said, "I'm already here" and that "[I]t's too late for that sh*t." Petitioner contends that Cpl. Pack failed to clarify that it was not too late to have an attorney present, which resulted in petitioner giving his statement in violation of his due process rights. According to petitioner, respondent filed a motion to determine the voluntariness of the statement, and petitioner filed a motion to suppress the statement. During the August 2, 2018, pretrial hearing, the State indicated it did not intend to use petitioner's statement in its case-in-chief because the statement did not implicate petitioner. However, after petitioner submitted his notice of alibi, the State asserted that it may use petitioner's statement for impeachment purposes if petitioner testified he was at home because in his statement he stated that he was at his girlfriend's house. After hearing Cpl. Pack's testimony regarding petitioner's statement, the circuit court found that the statement was freely and voluntarily given, was not inculpatory, and was admissible with respect to impeaching petitioner if he testified. Petitioner asserts that a confession that has been found to be involuntary in the sense that it was not the product of the freewill of the defendant cannot be used by the State for any purpose at trial. Syl. Pt. 2, *State v. Goff*, 169 W. Va. 778, 289 S.E.2d 473 (1982).

This Court has held that "[a] trial court's decision regarding the voluntariness of a confession will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence." Syl. Pt. 3, *State v. Vance*, 162 W. Va. 467, 250 S.E.2d 146 (1978). More recently, we held:

> This Court is constitutionally obligated to give plenary, independent, and *de novo* review to the ultimate question of whether a particular confession is voluntary and whether the lower court applied the correct legal standard in making its determination. The holdings of prior West Virginia cases suggesting deference in this area continue, but that deference is limited to factual findings as opposed to legal conclusions.

Syl. Pt. 2, *State v. Farley*, 192 W. Va. 247, 452 S.E.2d 50 (1994). Here, Cpl. Pack, reading from a form waiver of the right to remain silent and right to counsel, advised petitioner "if you do not have an attorney available you have the right to remain silent until you have the opportunity to consult with one." Petitioner responded, "Yes sir," and then asked, "What do they mean by that?"

4

Cpl. Pack again read the statement to him and began telling him "if you wanted to talk to one before you talk to me this . . . ." Petitioner interrupted and said he was "already here . . . [i]t's too late for that." Petitioner then initialed and signed the Miranda Rights form that explicitly advised him of his rights. Therefore, based on the totality of the circumstances surrounding petitioner's statement, we find that the circuit court was not plainly wrong and its decision was not against the weight of the evidence in permitting the admission of petitioner's statement.

Petitioner next asserts that the circuit court erred by admitting evidence taken from his cell phone seized in violation of his constitutional rights. Petitioner's counsel moved to suppress cell phone evidence, but the circuit court denied that motion. Without citing to the record, petitioner argues that his counsel continued his objection to the use of the cell phone evidence throughout the trial. Sgt. Willis obtained consent from A.J. to search her residence when petitioner was inside, and when petitioner was found, Sgt. Willis placed him under arrest. Sgt. Willis performed a routine search of petitioner's person for weapons or other items, at which time he found and seized petitioner's cell phone. On January 24, 2018, Sgt. Willis obtained a search warrant to download the contents of petitioner's cell phone to see if there was any evidence directly related to this matter. Cpl. Pack testified that after petitioner was read his *Miranda* rights, Cpl. Pack asked petitioner for the phone passcode and petitioner gave it to him. Cpl. Pack further asserted that petitioner did not invoke his right to counsel, was not coerced, and gave him the passcode without resistance.

Petitioner argues that his cell phone was obtained during a protective search upon his arrest, but he was not advised that information from that phone could be used against him at trial. He claims that he was also not advised that he could request the return of property not related to the crime for which he was charged. Because he denies giving the passcode to law enforcement, petitioner contends that the search of the content of the phone was unreasonable and in violation of his constitutional rights. Further, he asserts that because he did not provide the passcode, the evidence obtained from his cell phone should not have been admissible during trial.

As we recently found,

[w]hen reviewing a ruling on a motion to suppress, we take the facts in the light most favorable to the State, review the circuit court's factual findings for clear error, and conduct a de novo review of the determination of whether the search or seizure violated the Fourth Amendment. We detailed that standard of review in Syllabus Points 1 and 2 of *State v. Lacy*[, 196 W. Va. 104, 468 S.E.2d 719 (1996).]:

When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error.

In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made.

*State v. Deem*, No. 18-0608, slip op. at 7-8 (W. Va. Oct. 20, 2020) (footnotes omitted).

As we have found

searches and seizures performed without a valid warrant are presumed to be unreasonable, and will be lawful only if the search and seizure falls within a recognized exception to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454-55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 575-576 (1971); *accord Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967) (valid warrant requirement supported by probable cause "subject only to a few specifically established and well-delineated exceptions"). In Syllabus Point 20 of *State v. Ladd,* 210 W.Va. 413, 557 S.E.2d 820 (2001), this Court explained as follows:

> "Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Article III, Section 6 of the West Virginia Constitution-subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative." Syllabus Point 1, *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980), *overruled in part on other grounds by State v. Julius,* 185 W.Va. 422, 408 S.E.2d 1 (1991).

*See also State v. Bookheimer,* 221 W.Va. 720, 656 S.E.2d 471 (2007); *State v. Kendall,* 219 W.Va. 686, 639 S.E.2d 778 (2006). Examples of recognized exceptions to the general warrant requirement include certain brief investigatory stops, searches incident to a valid arrest, seizures of items in plain view, searches and seizures justified by exigent circumstances, consensual searches, and searches in which the special needs of law enforcement make the probable cause and warrant requirements impracticable. *Warrantless Searches and Seizures,* 37 Geo.L.J. Ann.Rev.Crim.Proc. 39, 40 (2008). *See also State v. Duvernoy,* 156 W.Va. 578, 195 S.E.2d 631 (1973).

*Ullom v. Miller*, 227 W. Va. 1, 8-9, 705 S.E.2d 111, 118-19 (2010). This Court has long held that a warrant is not needed for "searches and seizures made that have been consented to." *State v. Angel*, 154 W. Va. 615, 628, 177 S.E.2d 562, 570 (1970). Further, even if we disregarded the evidence that petitioner provided the passcode to his phone after being read his *Miranda* rights, the inevitable discovery rule supports law enforcement's search of petitioner's cell phone, if any, prior to obtaining the unchallenged warrant. "'Under the inevitable discovery rule, unlawfully obtained evidence is not subject to the exclusionary rule if it is shown that the evidence would have been discovered pursuant to a properly executed search warrant.' Syl. Pt. 3, *State v. Flippo*, 212 W. Va. 560, 575 S.E.2d 170 (2002)." Syl. Pt. 9, *State v. Barefield*, 240 W. Va. 587, 814 S.E.2d 250 (2018).

Petitioner herein does not dispute that his phone was taken during a search of his person incidental to his arrest. Petitioner also does not challenge the probable cause finding for the later issued search warrant, instead arguing that the evidence seized from downloading the contents of his phone should have been suppressed because he did not provide the passcode to his cell phone to Cpl. Pack. However, Cpl. Pack testified that he asked petitioner for the passcode after petitioner was read his *Miranda* rights and petitioner freely provided that passcode. As noted above, petitioner does not provide an alternative theory for officers' knowledge of that passcode. Viewing the facts in the light most favorable to the State, even if the provision of the passcode did not constitute a waiver of petitioner's right to remain silent after being informed that anything he said could be used against him, we find that the officers were reasonable in seizing petitioner's phone as incidental to his arrest and subsequently searching that phone. Therefore, we find that the circuit court did not err in denying petitioner's motion to suppress evidence obtained from his phone.

As his third assignment of error, petitioner contends that the circuit court erred by admitting sales transaction records indicating petitioner purchased the rifle used in the robbery. On December 6, 2018, five days prior to trial, the State disclosed a firearm transaction record for the rifle at issue, including a 902(11) certification from Bare Arms Gun and Pawn where the weapon was purchased. On December 10, 2018, trial counsel filed a motion in limine to suppress the gun transaction record due to the lateness of the disclosure. Petitioner asserts that the ownership was a material fact in the case so the State's failure to timely disclose that information "is fatal to its case" because "such non-disclosure is prejudicial."

As we previously found, "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). This Court has further explained that

> "[t]he traditional appellate standard for determining prejudice for discovery violations under Rule 16 of the West Virginia Rules of Criminal Procedure involves a two-pronged analysis: (1) did the non-disclosure surprise the defendant on a material fact, and (2) did it hamper the preparation and presentation of the defendant's case." Syllabus Point 2, *State ex rel. Rusen v. Hill*, 193 W.Va. 133, 454 S.E.2d 427 (1994).

Syl. Pt. 1, *State v. Adkins*, 223 W. Va. 838, 679 S.E.2d 670 (2009). In addition,

The rule concerning reversal of a criminal conviction for the prosecution's failure to disclose evidence pursuant to court-ordered discovery has been stated as follows:

> "When a trial court grants a pre-trial discovery motion requiring the prosecution to disclose evidence in its possession, non-disclosure by the prosecution is fatal to its case where such non-disclosure is prejudicial. The non-disclosure is prejudicial where the defense is surprised on a material issue and where the failure to make the disclosure hampers the preparation and presentation of the defendant's case." Syllabus Point 2, *State v. Grimm,* 165 W.Va. 547, 270 S.E.2d 173 (1980).

Syllabus Point 5, *State v. Hatfield,* 169 W.Va. 191, 286 S.E.2d 402 (1982). The same rule applies to late production of evidence. *State v. Trail,* 174 W.Va. 656, 328 S.E.2d 671 (1985). *See also State v. Ward,* 168 W.Va. 385, 284 S.E.2d 881 (1981).

*State v. Hobbs*, 178 W. Va. 128, 130, 358 S.E.2d 212, 214 (1987).

The State asserts that the circuit court did not err in admitting the sales transaction record demonstrating that petitioner purchased the firearm used in the robbery pursuant to Rule 403 of the West Virginia Rules of Evidence. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." As the circuit court found, the evidence had "some relevan[c]e and materiality to [the weapon used in the attempted robbery] and do not come as a – should not come as a shock to [petitioner]." Thus, the trial court properly weighed the probative value of the transaction records against any prejudicial value to petitioner and properly admitted that evidence at trial.

Pursuant to syllabus point 2 of *State ex rel. Rusen v. Hill*, 193 W. Va. at 135, 454 S.E.2d at 429, we must consider whether the late disclosure of the firearm purchase record surprised petitioner as to a material fact and hampered the preparation or presentation of his case. Petitioner showed Mr. Green a gun in the trunk of S.J.'s car, and it is undisputed that Miranda was shot in the chest during the commission of this crime. Further, it is unquestionable that Miranda used that same gun to shoot one of her assailants. It does not appear that petitioner argues that this was a case of mistaken identity, particularly because he admitted to his involvement in at least portions of the crime. As we explained in *Rusen*,

> [t]he purpose of Rule 16(a), our basic discovery rule in criminal cases, is to protect a defendant's right to a fair trial. The degree to which that right suffers as a result of a discovery violation cannot be determined by simply asking would the nondisclosed information enhance or destroy the State's case. A significant inquiry is how would the timely access of that information have affected the success of a defendant's case.

*Id.* at 139, 454 S.E.2d at 433. Here, petitioner has failed to identify how timely access to the

purchase record would have affected the success of his case. Therefore, we find that the circuit court did not abuse its discretion in allowing the admission of that record.

In his fourth assignment of error, petitioner contends that the circuit court erred by denying his motion to continue the trial to obtain a mental competency evaluation. In support of that contention, petitioner states that his trial counsel filed a motion for a competency evaluation on December 3, 2018, purportedly based upon a conversation counsel had with petitioner's mother regarding his diagnoses of "attention hyperactivity disorder and another disorder involving his conduct." Petitioner also points to his treatment at Appalachian Psychiatric Services and FRMS (without identifying what FRMS is) and admission to BAR-H for "behavior disorders." Trial counsel also informed the circuit court of his interactions with petitioner that required repetition and additional explanations. The circuit court found that petitioner had been before it numerous times without exhibiting anything that would lead the court to believe that petitioner is incompetent. The court also noted that it did not see any indication that petitioner could not follow instructions or exhibit any signs of mental disease or defect. The circuit court, therefore, denied petitioner's motion. After setting forth these facts, petitioner simply cites one point of law without setting forth any analysis: "When a trial judge is made aware of a possible problem with defendant's competency, it is abuse of discretion to deny a motion for psychiatric evaluation." Syl. Pt. 4, in part, *State v. Demastus*, 165 W. Va. 572, 270 S.E.2d 649 (1980).

As the United States Supreme Court found, the standard for competence to stand trial is whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). Petitioner's trial counsel acknowledged at the hearing that petitioner's issues "were not readily apparent to [him], when [he] met with [petitioner]." Trial counsel became aware only after petitioner's mother told him she believed petitioner had "difficulty understanding these proceedings and understanding what it meant to present evidence at trial." However, the State noted that petitioner entered a guilty plea to battery on a police officer in October of 2017 and subsequently pled guilty to another battery charge in Raleigh County. In addition, petitioner failed to submit any medical records demonstrating that he had a mental disease or defect. Further, the underlying case had been pending for approximately fifteen months before counsel raised the issue of competency, and there is no allegation that petitioner developed a mental condition during that time. As the circuit court found, petitioner seemed to exhibit difficulties following instructions at the regional jail, rather than exhibiting signs of a mental disease or defect. Therefore, we find that the circuit court did not err in denying petitioner's motion to continue in order to obtain a mental competency evaluation.

Petitioner next asserts that the circuit court erred by imposing an excessive sentence. There was trial testimony that indicated the intent of petitioner and his co-defendants was to go to Mr. Pyatt's home to rob him. Without citing to the record, petitioner contends that at that time he was only twenty-years-old and had limited prior criminal history, making him eligible for the Anthony Center as a youthful offender. Petitioner argues that his sentence of seventy-five years for attempted robbery shocks the conscience of society due to his age and limited prior criminal history. Further, neither petitioner nor his co-defendants demanded money or items in an attempt to rob Miranda. Without citing any authority, petitioner contends that the legislative purpose is "obviously to deter people from committing robberies in our communities as evidenced by the

open-ended sentencing guideline that provides no maximum sentence." While petitioner acknowledges that this Court and courts in other jurisdictions have upheld sentences greater than petitioner's, petitioner asserts that the mitigating factors outweigh the aggravating factors related to sentencing. As this Court found in *State v. Williams*, 205 W. Va. 552, 555, 519 S.E.2d 835, 838 (1999),

> [t]o determine whether a sentence shocks the conscience, we consider all of the circumstances surrounding the offense. *State v. Phillips,* 199 W.Va. 507, 513, 485 S.E.2d 676, 682 (1997).  In this case, the crime which the appellant committed was not only of a violent nature, but resulted in the death of the victim. Although the appellant did not personally shoot Hundley, she was responsible for setting the chain of events in motion that led to his death. It was the appellant that invited Yoney and Swafford to accompany her and her friends to Hundley's house on the night of June 7, 1997. In imposing the sentence upon the appellant, the sentencing court commented:

>> The crime in which you were involved and the crime for which you stand convicted was of a violent nature. It was of dangerous proportions. It was clearly deliberate. No matter what all that can be said back and forth, it was a deliberate plan or scheme that you and Toulouzi [sic] and the others engaged in, to take money from the victim.

> Based upon the violent nature of the crime for which the appellant stands convicted and the fact that the victim died as a result of the appellant's actions, we find that the sentence imposed upon her does not shock the conscience of the court and society.

While the victim in the instant case, Miranda, survived the attack, this analysis set forth in *Williams* is clearly applicable, as petitioner asked Mr. Green if he would like to participate in the crime; petitioner purchased a gun, apparently in order to commit this crime; and the crime was unquestionably of a violent nature. Further, as we found in *Williams*,

> [t]he application of [the Youthful Offender] statute is discretionary and in this case, the circuit court determined that the appellant would not benefit from the rehabilitative atmosphere of a detention center. The record in this case establishes that in determining the appropriate sentence, the circuit court considered the violent and dangerous nature of the crime committed by the appellant.

205 W. Va. at 559, 519 S.E.2d at 842. In the instant matter, in addition to the violent nature of the crime, the circuit court noted that petitioner's criminal history demonstrated a propensity for

violence and that petitioner failed to accept any responsibility for his conduct.[5] For these reasons, we find that petitioner's sentence is not excessive.

Petitioner's sixth assignment of error is his contention that the circuit court erred by denying his motion for judgment of acquittal for robbery based on insufficient evidence to support a conviction. At the close of the State's case-in-chief, counsel moved for a judgment of acquittal on the robbery charge based on the testimony presented. However, the circuit court found that there was sufficient evidence for the jury to consider the charge. Petitioner asserts that there was insufficient evidence to prove robbery or attempted robbery, as neither he nor his co-defendants demanded money or items, entered the residence to obtain money or items, or made any effort to take money or items from Miranda on the night in question. He, therefore, contends that the circuit court abused its discretion in denying his motion for judgment of acquittal on the robbery charge. Petitioner also contests the assertion that he had possession of the firearm at issue or that he discharged the firearm.

We have said that

[w]hen a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. Pt. 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996). Further,

[t]he trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*Id.* at 304, 470 S.E.2d at 623.

In the instant case, Mr. Green's testimony established that petitioner approached him about robbing Mr. Pyatt because they knew he had guns and money. S.J. drove petitioner and the other two men to Miranda's house, where the three men surrounded Miranda, at which time she was shot. Taking the evidence in the light most favorable to the prosecution, it is clear that petitioner's intent in obtaining the gun, traveling to Miranda's home, and approaching her were to unlawfully take and carry away money or goods from Mr. Pyatt and/or Miranda by force or putting them in fear with the intent to steal money or goods. Syl. Pt. 3, *State v. Henson*, 239 W. Va. 898, 806

---

[5]Because petitioner does not contest the fact that this Court and courts in other jurisdictions have upheld sentences greater than petitioner's for the same crime, we need not address the objective test. *See State v. Cooper*, 172 W. Va. 266, 272-73, 304 S.E.2d 851, 857 (1983).

S.E.2d 822 (2017). Similarly, this Court previously addressed a similar situation wherein

> [t]wo men, wearing ski masks, entered a convenience store. One of the store clerks was ordered onto the floor at gunpoint, while the other clerk was shot as she came out of the back stockroom. No property was taken from the store. The defendant, one of the masked men involved in the attempted robbery, argued that only one count of attempted aggravated robbery could be charged because the property sought to be taken belonged to only one owner, the convenience store.

*Id.* at 906-07, 806 S.E.2d at 830-31 (discussing *State v. Collins*, 174 W. Va. 767, 329 S.E.2d 839 (1984)). As we found in *Collins*, "[i]t is impossible to conclude from either the common law or W.Va. Code, 61-2-12, that an attempt to rob a store by presenting a firearm and leaving without taking any property can . . . result in multiple convictions of attempted aggravated robbery for each clerk present in such store." Syl. Pt. 2, *Collins*, 174 W. Va. at 768, 329 S.E.2d at 840. Here, petitioner was properly charged with a single count of attempted robbery. The fact that the attempt was unsuccessful does not entitle petitioner to a judgment of acquittal, particularly because the robbery was unsuccessful only because the victim was able to wrestle the gun away from her assailants and shoot Mr. Green. Therefore, we find that the circuit court did not err in denying petitioner's motion for judgment of acquittal on this charge.

Finally, petitioner argues that his right to be tried by a cross section of his peers was violated due to the limited number of African Americans on the jury panel. While petitioner asserts that he is African American but "members of his race were excluded from the jury panel," he fails to cite to the record for those contentions. He also fails to cite to the record regarding jury selection, objections during that process, or rulings from the circuit court related to jury selection. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law presented, the standard of review applicable, and citing the authorities relied on . . . . The argument *must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal*. The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Additionally, in an Administrative Order entered December 10, 2012, Re: Filings That Do Not Comply With the Rules of Appellate Procedure, the Court noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the . . . record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, petitioner's brief is inadequate as it fails to comply with the administrative order and the West Virginia Rules of Appellate Procedure, and thus, we decline to address this assignment of error on appeal.

For the reasons set forth herein, we find that petitioner's assignments of error are without merit and hereby affirm the circuit court's February 28, 2019, sentencing and commitment order.

Affirmed.

**ISSUED:** January 20, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice William R. Wooton